(No. 32729.

CHICAGO AND WESTERN INDIANA RAILROAD COMPANY, Appellee, *vs.* ERIC ALQUIST *et al.*—(THE CITY OF CHICAGO, Appellant.)

*Opinion filed September 24, 1953.*

John J. Mortimer, Corporation Counsel, of Chicago, (L. Louis Karton, and Joseph F. Fox, of counsel,) for appellant.

J. R. Barse, Samuel Kassel, and Franklin C. Gagen, all of Chicago, for appellee.

Mr. Justice Maxwell delivered the opinion of the court:

This is a direct appeal from a judgment of the circuit court of Cook County finding that neither the city of Chicago nor the public had any rights or interest in a certain tract of land which appellee sought to condemn for railroad purposes. This court has jurisdiction because a freehold is involved.

On June 17, 1949, appellee filed its petition to condemn certain properties in the city of Chicago for railroad purposes. Only one tract, designated in the petition as tract 3, is involved in this appeal. Tract 3 is a strip of land approximately 66 feet wide running from the south line of Forty-seventh Street in the city of Chicago south to the north line of appellee's right of way. It is a part of a tract included in an attempted subdivision made by one William H. W. Cushman in 1871 commonly called South Side Homestead Association Addition and appears on the plat of such attempted subdivision as a small part of Bissell Street. The name was later changed to Butler Street and more recently called Normal Avenue.

The plat of this attempted subdivision was recorded January 19, 1871. In 1877 Connecticut Mutual Life Insurance Company filed its complaint in the United States Cir-

cuit Court to foreclose a mortgage on certain lands including this subdivision. The complaint alleged that the purported subdivision was not binding upon the mortgagee. The city of Chicago was made a party to the suit. On July 14, 1879, a decree of foreclosure and sale of the mortgaged premises was entered and the court found that the mortgaged premises were subdivided after the execution of the mortgage and such subdivision being unauthorized by the mortgagee was not binding on the mortgagee. The subdivision was also found to be defective because of a failure to conform to the statute. Prior to the commencement of the foreclosure proceeding the mortgagor had conveyed certain of the lots in the purported subdivision.

The decree of foreclosure and sale provided that the lots in the purported subdivision be sold first and that in case of a deficiency the streets and alleys be sold last. The sale of the lots by the master failed to realize the amount of the remaining indebtedness, interest and costs and at a later date the street and alleys, including tract 3, were sold. The mortgagee purchased the streets and alleys, they were not redeemed and the mortgagee received a master's deed therefor on October 22, 1891.

On June 19, 1900, Connecticut Mutual Life Insurance Company filed its original petition in chancery in the superior court of Cook County against the city of Chicago and other defendants seeking to confirm its title in fee simple absolute to certain lands including the tract herein referred to as tract 3. The city of Chicago filed its answer and cross petition in said suit contesting the title of the petitioner to the portions of land described in the petition shown as streets and alleys on the purported subdivision of South Side Homestead Association Addition. The city contended the streets and alleys were public property, while petitioner contended they were private property.

Prior to the rendition of the final decree in said cause, the Connecticut Mutual Life Insurance Company conveyed

the property to one Walter Mills who filed his supplemental and intervening petition in said cause. The conveyance by the insurance company to Mills was effected by two deeds dated December 10, 1906, one of which included the land referred to herein as tract 3.

A special master found against the city of Chicago as to the streets and alleys including tract 3. The chancellor approved the master's report in its entirety.

At a later date the city council of Chicago authorized its corporation counsel to enter into and file a stipulation in said cause by which it was stipulated and agreed that upon the payment of the sum of $6000 to the city of Chicago, the city would not appeal from the final decree entered in said cause, nor sue out a writ of error thereto, nor file a bill of review concerning the matters therein decided and that it would waive and release all errors that might exist or intervene in said proceedings including the entry of the final decree. This stipulation was incorporated into the final decree of the court, and on June 21, 1907, the city of Chicago was paid the $6000 pursuant to the stipulation.

In its final decree the court found that Connecticut Mutual Life Insurance Company became the owner of the streets and alleys by virtue of the master's deed and that the insurance company did convey to Walter Mills all of the premises so owned by it by its two deeds of December 10, 1906, and it further found "that the city of Chicago and the public have no right, title or interest by way of easement or otherwise in and to the portion of the premises so owned by the petitioner, Walter Mills, shown as streets or alleys upon said pretended map of subdivision, so made by William H. Cushman * * *, and that neither the petitioner, Walter Mills, nor said Insurance Company are estopped by reason of any acts or doings of said Insurance Company, or said Mills, to deny that said portions are public streets or alleys, and that said plat did not constitute a conveyance or dedication of the said streets and alleys

in any wise binding upon the said insurance company, or the said Mills; * * * that the city of Chicago has failed to prove the allegations of its said cross petition herein and that the same is without equity."

In the legal description of the land decreed to be the property of Mills the eastern boundary of the tract was recited as running along the west line of Bissell Street instead of the east line. The effect of this was to omit Bissell Street from the legal description in the decree although it was included as one of the streets and alleys on the plat of the pretended subdivision and was specifically included in the description contained in the master's report, and was included in one of the two deeds made to Walter Mills and specifically referred to by the court.

After the entry of the final decree in said cause Walter Mills and his wife conveyed tract 3 and other lands to appellee and appellee bases its title on such conveyance.

Appellant seeks a reversal of the judgment from which this appeal is taken on the ground that filing of the plat of the defective subdivision and subsequent acceptance by the city of the streets and alleys therein constitutes a common-law dedication.

Appellee contends that the decision of the superior court of Cook County in 1907 is *res judicata* on that question.

The principle of *res judicata* is that where a cause of action has once been decided on the merits by a court of competent jurisdiction such decision is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar of a subsequent action involving the same claim, demand or cause of action. In all cases where the second suit is upon the same cause of action and between the same parties or their privies as the former action, the doctrine extends to all grounds of recovery or defenses which might have been presented. *People* v. *Kidd,* 398 Ill. 405; *Leitch* v. *Hine,* 393 Ill. 211.

It is apparent from the pleadings and the final decree of the superior court of Cook County rendered in 1907 in the suit to confirm title to the streets and alleys in Connecticut Mutual Life Insurance Company and Walter Mills, that that case is determinative of the question of common-law dedication by reason of the defective plat, and we hold that the decision in that case, being a final decree upon the merits and being within the jurisdiction of the court rendering it, is *res judicata* between the parties on that question. Appellant argues strenuously that the decision of the superior court cannot affect tract 3 because the legal description of the land set forth in the decree omitted tract 3. This argument is without merit because tract 3 was one of the streets and alleys included in that litigation and the court expressed its intention to confirm title to all of such purported streets and alleys in Walter Mills. In addition to this the city entered into a stipulation, which is included in the final decree, whereby, in consideration of the payment of $6000, it waived all errors in the proceeding, including any errors in the final decree.

Appellant next contends that if there was no common-law dedication the city has an easement to tract 3, and especially the north 141 feet thereof by reason of prescriptive use for over fifteen years.

Appellee contends that the use was permissive and therefore could not ripen into an easement by prescription.

In order to clearly understand the issue involved it is necessary to examine the physical condition of the properties adjoining tract 3. As heretofore stated, tract 3 runs from Forty-seventh Street south to appellee's railroad tracks. It does not cross the tracks, but comes to a dead end and there are no other streets entering tract 3 south of Forty-seventh Street. There are a number of other railroad tracks in close proximity to appellees tracks south and east of tract 3. The next street west of tract 3 is Wallace Street. Between tract 3 and Wallace Street there

is a row of lots fronting on Forty-seventh Street and running south to a depth of 125 feet. These lots are improved with dwelling houses. At the rear or south end of these lots there is a 16-foot alley or driveway running east and west between Wallace Street and tract 3. The land to the south of this alley, adjoining tract 3 on the west and extending south to the railroad tracks, is occupied by freight yards, warehouses, loading docks and related business buildings. The land ajoining tract 3 on the east from Forty-seventh Street south to appellee's tracks is occupied by a coal yard. The freight houses, loading docks and related business structures on the land adjoining tract 3 have for many years been occupied by tenants and patrons of appellee and the evidence discloses that at the time of the decree of the superior court in 1907 tract 3 was being used as a way of ingress to and egress from these properties. There is no other way of ingress to or egress from these properties and this tract has been in continuous use for that purpose by tenants, subtenants and patrons of appellee. No improvements were placed on tract 3 except by the railroad company which filled it in with cinders to facilitate its use by motorcars and freight trucks. During the same period occupants of the dwelling houses facing on Forty-seventh Street have frequently used the north 141 feet of tract 3 as an entrance to or exit from the east end of the alley at the rear of their lots. Appellee has never sought to prevent the public generally from using any part of tract 3.

Witnesses for the city testified that tract 3 has been used by the public generally for more than fifteen years prior to the filing of the condemnation proceeding, but on cross-examination these witnesses testified that the character of the traffic was chiefly that of large transport and freight trucks of the types that would load and unload freight at the loading docks and freight houses occupied by appellee's tenants, and although it is apparent that the public generally used tract 3 as a roadway without objection and without

seeking a license or permission from appellee, its chief use was by persons desiring to do business with occupants of the railroad properties. The use by the public was merely incidental and no attempt was made by appellee to exclude this incidental use.

In this respect this case is not unlike the case of *Doss* v. *Bunyan*, 262 Ill. 101. In that case an elevator was constructed on the railroad right of way and a lumber shed, coal shed and grain office with scales were located on lands adjoining the railroad right of way. The only means of ingress and egrees from these buildings was a strip of the railroad right of way which was used by persons having occasion to transact business with the railroad company's tenants or to haul grain, lumber or coal to or from those places. It was constantly used for those purposes. The public generally also traveled this tract at will for many years, more than the number required by the statute for the establishment of a highway by prescription, without objection or interruption by the owner. We held in that case that under those circumstances the use of this highway by the public was permissive. In order to establish a highway by prescription the use of such a highway by the public must be adverse and under claim of right. *Town of Anchor* v. *Stewart*, 270 Ill. 57.

The use of tract 3 by the public in the case at bar was wholly permissive. There is nothing to indicate that the railroad company or its tenants had any reason to suppose that the public claimed the right to use the roadway after the city acquiesced in the superior court decree of 1907. Such use cannot create a highway by prescription. The numerous cases cited by appellant in support of its argument are all distinguishable on the facts.

The judgment of the circuit court is correct and is affirmed.

*Judgment affirmed.*