THE CITY OF CRYSTAL LAKE, Plaintiff-Appellant, *v.* LA SALLE NATIONAL BANK, Trustee, *et al.*, Defendants-Appellees.

Second District   No. 83—61

Opinion filed January 25, 1984.

Michael F. Kukla, of Cowlin, Cowlin & Ungvarsky, of Crystal Lake, for appellant.

James R. Green and Scott M. Green, both of Holmstrom and Green, of Woodstock, and Philip W. Tone, of Jenner & Block, of Chicago, for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The city of Crystal Lake appeals from an order dismissing its petition to condemn approximately 601 acres of land for a municipal airport. In issue is the effect of an earlier filed petition to condemn a portion of the same property for an airport filed by the village of Lake in the Hills, a nonparty to these proceedings.

The subject land consists of three parcels: the "Cohn" property, approximately 158 acres contiguous to the southern boundary of the village of Crystal Lake; the "Pedersen" property, 208 acres contiguous to the northern boundary of the village of Lake in the Hills (LITH); and a 236-acre tract lying between these properties. The "Cohn" property has been owned by the defendant Material Service Corporation (MSC) since 1956; the "Pedersen" property has been owned by the defendant Mineral Land and Resources Corporation (MLR) since late 1980; the middle parcel has been owned beneficially by MLR since early 1981. The Lake in the Hills airport which was formerly operated privately and known as the Crystal Lake Airport (the Airport) occupies approximately 27 acres of the middle parcel.

Before any activity leading to the instant suit began, the subject property lay in unincorporated McHenry County. On January 21, 1981, the defendants' requested annexation to LITH and rezoning to M-1 to allow excavation of sand and gravel and other raw materials. LITH filed a petition to condemn the airport property on January 26, 1981. Crystal Lake filed its condemnation petition against the subject property on March 5, 1981. On August 24, 1981, LITH annexed and rezoned the subject property to allow gravel mining on most of the property and to allow the airport to continue as a special use. Following this, Crystal Lake filed a petition for leave to intervene in LITH's eminent domain proceedings with an attached traverse and motion to dismiss.

On February 2, 1982, LITH and the defendants entered into a stipulation to settle the condemnation suit in accordance with the pro-

visions of an attached agreement.

Defendants filed a traverse and motion to dismiss Crystal Lake's condemnation suit April 16, 1981, and an amended traverse and motion on February 16, 1982. At the close of Crystal Lake's case the trial court granted defendants' amended traverse and motion to dismiss. The trial judge found that LITH had filed its petition to condemn prior to the filing of the petition by Crystal Lake to condemn the same property; that all subsequent proceedings related to the filing date; and that after annexation of the subject property to LITH the parties to the LITH suit sought to enter into a consent decree to confirm the taking. The court rejected Crystal Lake's contention that acts subsequent to the filing of the petition including the exchange of deeds amounted to an abandonment of the LITH condemnation action.

On December 28, 1982, the trial court denied Crystal Lake's motion to intervene in the LITH condemnation suit, denied defendants' traverse and motion to dismiss, granted LITH's petition to condemn the subject property, and stated that it would enter a decree in accordance with the agreement when presented. When Crystal Lake objected to the granting of the motion prior to the judgment in the LITH suit the court agreed to stay its order in that case "to make sure they follow through." It is conceded that Crystal Lake did not appeal the denial of its petition to intervene in the LITH suit nor otherwise seek review of the final judgment in condemnation in that case.

Crystal Lake here appeals from the December 22, 1982, judgment granting defendants' traverse and motion to dismiss.

## I

Crystal Lake essentially contends that to have priority LITH must be able to relate its title to the date of the filing of its petition to condemn; that this requires payment of just compensation under a valid condemnation decree and that LITH by entering into an agreement for payment of compensation in installments over a period of years failed to comply with the judgments section of the Eminent Domain Act. (Ill. Rev. Stat. 1979, ch. 47, par. 10; now Ill. Rev. Stat. 1981, ch. 110, par. 7—123.) (Hereafter all references will be to the 1982 recodification of the Eminent Domain Act in the Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, pars. 7—101 *et seq.*) Crystal Lake also argues that the acceptance of a deed prior to judgment for a small portion of the property described in the petition cannot effect the relation back of title, thus, that the Crystal Lake condemnation suit

must be given priority.

■■ ■ It is not disputed that, in Illinois, title does not vest until the condemnor pays the just compensation required, and that when payment is made the title relates back to the date of the filing of the condemnation petition. (See, *e.g., Board of Junior College District 504 v. Carey* (1969), 43 Ill. 2d 82, 84-85.) However, we do not perceive the essential question before us to involve the date of title to the condemned property but rather the priority as between two municipalities seeking the same land, one of whom files its condemnation petition prior to the other. It is well established in condemnation law that "the rights and interests of the parties date from the time of the filing of the condemnation petition." *Dowie v. Chicago, Waukegan & North Shore Ry. Co.* (1905), 214 Ill. 49, 54.

■■ The condemning body, absent statutory quick-take provisions, does not have the *right* to take possession until the ascertainment and payment of just compensation. (Ill. Rev. Stat. 1981, ch. 110, par. 7—123; *South Park Commissioners v. Dunlevy* (1878), 91 Ill. 49, 54.) In *Dunlevy* there is a suggestion that park commissioners did assume control over the property prior to payment of full compensation but that this was not an issue in the case since it had not been raised. (91 Ill. 49, 54.) Commonly, cases discussing the relation back of title upon the payment of full compensation involve tax liens or other rights or obligations which have accrued after the filing of the condemnation petition; it has been uniformly held that the liens do not affect title since that relates back to the filing of the petition although the obligations may be subject to resolution and payment from the compensation awarded. See, *e.g., Chicago Park District v. Downey Coal Co.* (1953), 1 Ill. 2d 54, 59; *City of Chicago v. McCausland* (1942), 379 Ill. 602, 604.

■■ In deciding the question of priority and in the absence of direct authorities in Illinois the trial judge placed reliance on *San Bernardino Valley Municipal Water District v. Gage Canal Co.* (1964), 226 Cal. App. 2d 206, 37 Cal. Rptr. 856. In *San Bernardino* a municipal water district pursuant to an authorizing statute filed a petition to condemn the water rights and certain of the physical properties of a water company. The company, as a special defense, alleged that there had been a condemnation action for the same property filed by the city of Riverside some 10 months prior to this suit. On the motion of the San Bernardino Water District the trial court stayed further proceedings until the termination of the condemnation action pending in the *Riverside* case, and on appeal this was affirmed. The court reasoned that condemnation is an *in rem* action, that two con-

demnors cannot have title and right to possession of the same *res*, that to allow both suits to go to judgment would be a disservice, and that, therefore, one judgment or the other must be conclusive. The court concluded that since a court of competent jurisdiction obtains jurisdiction of the *res* upon the filing of a petition, the first condemnor so to file must prevail. 226 Cal. App. 2d 206, 211, 37 Cal. Rptr. 856, 859.

While we have found no other cases in Illinois or elsewhere involving competing claims for condemnation by adjoining municipalities, we find the reasoning of the *San Bernardino* case to be persuasive.

## II

However, we must then examine Crystal Lake's further argument that LITH has lost its rights as a condemning authority by entering into what Crystal Lake characterizes as a private contract for purchase and an exchange of deeds.

The airport purchase agreement entered into on February 11, 1982, between LITH and the defendants common to both condemnation petitions, recites that LITH had heretofore filed a petition for condemnation and that the parties desire to settle the case by entering into the airport purchase agreement. The agreement provides that the total purchase price for the approximately 27 acres of the airport is $820,000, payable $4,783.33 per month, not to exceed 10 years or until the full purchase price is paid, and that on the 10th anniversary the unpaid principal balance together with all unpaid interest shall become due and payable if not sooner paid. The agreement further provides that the installment payments are payable solely out of net revenues derived by LITH from the operation or leasing of the airport and provides that the owners shall execute a trustee's deed conveying to the village legal title to the airport real estate "for so long as said real estate is being used for a public airport," with further provisions that on default the legal title shall revert to the owners. The agreement also grants various easements and rights of way and further provides that upon full payment of the purchase price a full warranty deed will be delivered omitting the limitation as to the airport use and reverter. The owners reserve mineral rights on the land underlying the airport and adjoining lands but agree not to commence the extraction of minerals from the runway area unless a substituted runway has been made available as provided in another section of the agreement.

The agreement specifically provides that it is being entered into in

settlement of the LITH condemnation case and that the parties shall petition the court in that case to enter a final decree by consent, settling and disposing of the case in accordance with the agreement.

The authorities reveal that as a common practice stipulations and agreements are entered into by the parties, with the agreement being incorporated into the final condemnation judgment. (*Parker v. Board of Trustees* (1966), 74 Ill. App. 2d 467, 470.) Such stipulations are generally confined to an agreement as to the compensation to be paid, but a variety of other matters may also be agreed upon and adopted in the consent decree. See *Chicago & Western Indiana R.R. Co. v. Alquist* (1953), 415 Ill. 537, 540 (stipulation to release errors and waive appeal); *Hoskins v. Chicago Park District* (1942), 380 Ill. 78, 81-83 (contract and stipulation relating to real estate and air rights); *Forest Preserve District v. Eckhoff* (1939), 372 Ill. 391, 394 (stipulation included the nature of improvements intended); *Miller v. Commissioners of Lincoln Park* (1917), 278 Ill. 400, 402-03 (contract limiting property claimed including waiver of accretions); *County of Will v. George* (1982), 103 Ill. App. 3d 1016, 1017 (stipulation to abide by decision of court as to disputed title to part of land to be taken); *Department of Transportation v. Catholic Diocese of Belleville* (1978), 63 Ill. App. 3d 683, 686 (settlement of "all issues ***," except damage to the remainder); *Department of Business & Economic Development v. Pioneer Trust & Savings Bank* (1973), 15 Ill. App. 3d 269, 271 (stipulation as to required findings).

Crystal Lake does not disagree with the general proposition that stipulations may be used in condemnation cases but argues that they cannot be used to circumvent the statutory requirement that compensation must be paid in full before title vests under the condemnation decree. LITH agrees that if payment is not made under the condemnation judgment when due then LITH may be deemed to have abandoned its condemnation proceeding; but that nothing in the Condemnation Act or in the cases governs the particular time period in which full compensation must be made.

As previously noted the statute merely provides that petitioners "shall enter upon such property and the use of the same upon payment of full compensation as ascertained, within a reasonable time to be fixed by the court, ***." Ill. Rev. Stat. 1981, ch. 110, par. 7—123(a).

We have been directed to no case holding that a particular time interval is or is not reasonable. It has been recognized that "[t]here is always a time interval between the filing of a petition and the ascertainment and payment or deposit of just compensation, and the dura-

tion of that interval may vary widely from one case to another." (*City of Chicago v. R.R. Building Corp.* (1962), 24 Ill. 2d 20, 22.) It also appears in *City of Chicago v. McCausland* (1942), 379 Ill. 602, 604, that almost seven years elapsed between the final judgment ascertaining just compensation in June 1929 and the depositing of the amount due on January 27, 1936.

■ The trial court's final order approving and incorporating the consent decree providing that title would finally vest when compensation had been paid in full, implicitly finds that the period provided is not unreasonable. In the absence of contrary authority defining the "reasonable time" for the full payment of compensation, particularly since the owners, who obviously are the parties the statutory provision is meant to protect, are not objecting, we can find no violation of the language or purpose of the Condemnation Act. LITH is in possession and in the position to accomplish the purpose for the condemnation, the operation of the existing airport as a municipal function.

Crystal Lake also argues that LITH abandoned its original petition and thereby has lost its claim to priority, when the consent decree, pursuant to the stipulation, provided for the reduction of the property taken from 236 acres, the "middle" property originally sought, to the same 27 acres constituting the actual airport together with easements over other property. We have recently held, however, that an amended petition which deletes part of the property originally sought, and adds no new property or different property is not a "substitution" of property and does not affect the valuation date. *Department of Transportation v. La Salle National Bank* (1981), 102 Ill. App. 3d 1093, 1097-98.

■ The interests acquired by LITH under the settlement and judgment are not confined merely to the fee simple interests in the 27 acres. In addition, permanent easements are acquired which affect a substantial part of the 236 acres for which fee simple title was originally sought. Easements are considered "property" which may be acquired under the Condemnation Act. (See, *e.g., Village of Bradley v. New York Central R.R. Co.* (1921), 296 Ill. 383, 388; *Department of Public Works & Buildings v. Schmauss* (1972), 6 Ill. App. 3d 470, 473.) It follows that the condemning body may acquire the fee or a lesser estate, within its power to acquire "property." (Ill. Rev. Stat. 1981, ch. 110, par. 7—101. And see, *e.g., Department of Public Works & Buildings v. Bozarth* (1968), 101 Ill. App. 2d 99, 102.) It may also be noted that the easements acquired by LITH over property not finally taken as well as the mineral rights retained by the defendants involve the same property as to which fee simple title was originally

sought, so that no new or additional property is being condemned.

Crystal Lake further argues that the condemnation judgment does not convey fee simple title to the airport because it contravenes rights given in the stipulation and the agreement that the owners may mine the land under the airport and that LITH may terminate and reconvey at any time. Crystal Lake reasons that LITH acquired nothing further by reason of the condemnation judgment since it had acquired everything under the agreement and by the deed. The owners argue, however, that the preliminary deed grants fee simple title to the 27-acre airport subject to defeasance, and grants no easement rights over surrounding property of the owners; whereas the final judgment grants fee simple title upon payment of just compensation as well as easement rights over the surrounding property as necessary for airport operations.

■ We agree with the defendants' contentions that the final judgment establishes the full rights of the parties, not the preliminary deed given under the stipulation and agreement. While we have found no reference in the cases to an exchange of a preliminary deed in a condemnation case, we also find no provision in the statute which either prohibits the procedure or states that the court has no authority to exercise its jurisdiction by entering a final judgment based on an agreement of the parties when a previous deed of any nature has been exchanged. Neither the municipality nor the owners have challenged the procedure followed here, and the trial court has given its approval by incorporating the previous arrangement in accordance with the stipulation of the parties in the final condemnation judgment.

We conclude that LITH does not take under the preliminary deed and the agreed settlement but takes under the final condemnation judgment.

*Mattion v. Trustees of Schools* (1971), 2 Ill. App. 3d 1035, relied upon by Crystal Lake, does not suggest a different conclusion. In *Mattion*, negotiations for settlement took place during the course of a condemnation proceeding which never went to final judgment. The parties incorporated no purchase agreement into the warranty deed which consummated the sale. When, five years later, the trustees declared the land surplus, the prior owners sought to establish and enforce a reverter clause in the deed. The *Mattion* court held that the trustees took by deed, not by condemnation, and that the deed contained no provision for reverter in case the trustees declared the land surplus, so that the land would not revert to the prior owners even though the purported basis for the condemnation had been use as a school site. (2 Ill. App. 3d 1035, 1038-39; compare *La Salle National*

*Bank v. County Board of School Trustees* (1974), 23 Ill. App. 3d 575.) In *La Salle,* where the facts were similar to those in *Mattion* except that no deed was exchanged, we held that the owners could not challenge the condemnation decree which incorporated the settlement agreement where no fraud had been shown. (23 Ill. App. 3d 575, 577-78.) LITH's initial entrance into the property by the temporary deed in this case, which was subject to defeasance as we have previously noted, does not alter the fact that the taking was here pursuant to the final judgment.

■ Much of the argument which Crystal Lake makes in this proceeding is based on the premise that it, as an adjoining municipality has the same right that a landowner has to insist on strict compliance with all of the provisions of the condemnation statute. In attempting to sustain a later filed condemnation petition it seeks to challenge an earlier filed a condemnation petition. It has been stated that in order to challenge a taking one must have a property interest affected and that one not alleging a property interest affected has no standing to challenge a taking. (*Midwest Television, Inc. v. Champaign-Urbana Communications, Inc.* (1976), 37 Ill. App. 3d 926, 934-35.) The only interest which Crystal Lake can claim is that it has filed a petition seeking to condemn the same property previously condemned under which it seeks priority. It is doubtful that this is a property right. Of course, if the earlier condemnation judgment were considered void for lack of jurisdiction or if the taking is not, as a final result, considered to be under the Eminent Domain Act there would then be no obstacle to Crystal Lake's petition. As noted, however, we have rejected both of these arguments.

We also reject the premise that an adjoining municipality has the same right as a landowner to insist on strict compliance with all of the provisions of the Eminent Domain Act. The entire purpose of the act is to regulate the rights and duties between the condemning authority and those holding property interests. It is designed to protect the landowner from the taking of his property without just compensation. (Ill. Const. 1970, art. I, sec. 15; Ill. Rev. Stat. 1981, ch. 110, par. 7—101 *et seq.*) The statutory process can survive a constitutional challenge only because it provides due process in the form of notice (Ill. Rev. Stat. 1981, ch. 110, par. 7—114), adequate opportunity to all persons who own the fee or have a property interest in the premises to challenge the condemnor's right to take (Ill. Rev. Stat. 1981, ch. 110, par. 7—102), and an opportunity to have a jury determine just compensation if the parties cannot agree. (Ill. Const. 1970, art. I, sec. 15; Ill. Rev. Stat. 1981, ch. 110, par. 7—101 *et seq.; Illinois Cities Water*

*Co. v. City of Mt. Vernon* (1957), 11 Ill. 2d 547, 551; *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 891.) As in other circumstances, the Illinois authorities have recognized that a settlement may be reached in condemnation, which, when incorporated in a decree of condemnation, will have the authority not merely of a private contract but of a court judgment. (See, *e.g., Chicago & Western Indiana R.R. Co. v. Alquist* (1953), 415 Ill. 537, 540; *Hoskins v. Chicago Park District* (1942), 380 Ill. 78, 81-83; *Forest Preserve District v. Eckhoff* (1939), 372 Ill. 391, 394; *Miller v. Commissioners of Lincoln Park* (1917), 278 Ill. 400, 402-03; *County of Will v. George* (1982), 103 Ill. App. 3d 1016, 1017; *Department of Transportation v. Catholic Diocese of Belleville* (1978), 63 Ill. App. 3d 683, 686; *Department of Business & Economic Development v. Pioneer Trust & Savings Bank* (1973), 15 Ill. App. 3d 269, 271.) The statutory restriction against a condemning authority's entitlement to possession until it pays the compensation awarded is for the protection of the landowner. (Ill. Rev. Stat. 1981, ch. 110, par. 7—123(a); *Department of Public Works & Buildings v. Butler Co.* (1958), 13 Ill. 2d 537, 545; *People ex rel. Hesterman v. Smart* (1928), 333 Ill. 135, 137.) The rule fixing the date for valuation of the property as the date of filing the petition (Ill. Rev. Stat. 1981, ch. 110, par. 7—121) operates to prevent "unjust enrichment to an unfair penalization of property owners" due to fluctuations in the value of the property after the petition was filed (*Department of Transportation v. La Salle National Bank* (1981), 102 Ill. App. 3d 1093, 1095) and to allow the condemnor to make accurate financial plans. The rule requiring the relation back of title to the date of filing the petition prevents the taking of private property for public use without just compensation by preventing liens against the just compensation for liabilities accruing after the valuation date. (*Chicago Park District v. Downey Coal Co.* (1953), 1 Ill. 2d 54, 59; *Board of Junior College District 504 v. Carey* (1969), 43 Ill. 2d 82, 86; *In re Application of County Collector* (1973), 13 Ill. App. 3d 927, 930.) The statute nowhere speaks of the rights of competing governments or their citizens which, because of the modern extension of extraterritorial intrusions, may have legitimate expectations of what is a proper or what is the best development of a nearby site. And none of the Illinois authorities cited by either party deal with these kinds of questions or issues of good regional planning.

We do not diminish the importance of such considerations, but in our view we may not consider or decide who has a plan which better serves the public in a review of condemnation law designed to deal only with the relationship between the taker and the property inter-

ests affected by the taking. The matter of competing authorities' condemnation rights in the same property is best left to the legislature.

In sum, we agree with the resolution of the pure condemnation issues by the trial court and with the acceptance of the reasoning of *San Bernardino Valley Municipal Water District v. Gage Canal Co.* (1964), 226 Cal. App. 2d 206, 37 Cal. Rptr. 856, giving the first to file the prior right to proceed to judgment. The trial court throughout, in the absence of objections by the landowners, did not exceed its jurisdiction of the subject matter and entered a judgment which is not void.

In this view, we do not reach other arguments made by the defendants: that Crystal Lake is collaterally estopped from challenging the judgment in the LITH case because it did not appeal from the denial of its motion for intervention or from the judgment entered; that Crystal Lake's petition to condemn is subject to dismissal because of abuse of the power conferred on an adjoining municipality by sections 11—103—1 and 11—103—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, pars. 11—103—1 and 11—103—2), as constituting an invasion of a property which was in the process of being annexed to another municipality; that Crystal Lake was attempting to condemn property for park district purposes when the park district had no such authority to condemn; and that the taking was excessive and motivated by a purpose to prevent gravel mining anywhere on the property. While all of these subjects were addressed in the trial of the case, we conclude that they require factual determinations, and we find no evidence in the record that the trial judge made findings on the stated challenges in the traverse and motion to dismiss except as to the excessive taking, on which the court ruled in Crystal Lake's favor.

The judgment of the Circuit Court of McHenry County is affirmed.

Affirmed.

NASH and HOPF, JJ., concur.