# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Village of Algonquin v. Lowe*, 2011 IL App (2d) 100603

---

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF ALGONQUIN, Plaintiff and Respondent-Appellant, v. JAS. A. LOWE, his Heirs and/or Assigns, CLARENCE J. EBEL, his Heirs and/or Assigns, OAK PARK NATIONAL BANK, as Trustee of a Trust Agreement Dated 5/17/54 and Known as Trust No. 2084, BENJAMIN C. GETZELMAN, his Heirs and/or Assigns, THE NORTHEN TRUST COMPANY, as Trustee of a Trust Agreement Dated 3/26/26 and Known as Trust No. 6478, UNKNOWN OWNERS, and NONRECORD CLAIMANTS, Defendants (Terrence Nagel and Bonnie Nagel, Petitioners-Appellees). |
| District & No. | Second District<br>Docket No. 2–10–0603 |
| Filed | June 1, 2011 |
| Held | In proceedings on a village's complaint for eminent-domain condemnation of a group of streets and associated tree-lawn/parkway areas in the village, the trial court properly granted appellees' section 2–1401 petition to vacate the judgment purporting to give the village title to a segment of the condemned property on which no road had been built that they had used as their driveway and primary means of vehicle access to their detached garage, since they were not properly served and the lack of personal jurisdiction over them made the condemnation judgment void as to them. |

| Decision Under Review | Appeal from the Circuit Court of McHenry County No. 06–ED–13; the Hon. Michael T. Caldwell, Judge, presiding. |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Jennifer J. Gibson, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellant. |
| | Michael E. Kalland, of Kalland & Romag, of Elgin, for appellees. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. Justices Zenoff and Schostok concurred in the judgment and opinion |

**OPINION**

¶ 1     The trial court granted a petition that Terrence Nagel and Bonnie Nagel filed under section 2–1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2–1401 (West 2008)). The petition asked the court to vacate a July 26, 2007, judgment that purported to give the Village of Algonquin title to certain land in the Village. That land included property that the Nagels were using for their driveway. The timing of the petition was such that granting it could be proper only if the judgment was void. The Nagels asserted that the Village had not obtained personal jurisdiction over them, so that the judgment was void as to them. The trial court agreed. The Village now argues that it obtained personal jurisdiction over the Nagels by publication service. We disagree, as a plaintiff cannot obtain personal jurisdiction over a defendant that it has never sought to identify. We therefore affirm.

¶ 2                                    BACKGROUND

¶ 3     On December 29, 2006, the Village filed a complaint for the eminent-domain condemnation of a group of streets and associated tree-lawn/parkway areas within the Village.[1] In the suit, the Village sought fee-simple title to all of the areas designated as streets

---

[1]Documents associated with the complaint suggest that several additions had been made to the Village in the 1950s but that there had never been a standard dedication of some of the areas designated for streets within those additions. As a result, the recorded title to some of the land used or intended to be used for streets remained in three individuals and two land trusts.

and all of the bordering tree- lawn/parkway areas. The property that the Village sought was thus a series of strips of land 60 feet wide with many interconnections. Some of the streets that the developer had platted had never been built, but the Village nevertheless sought to condemn the land designated for the unbuilt streets. In the complaint, the Village named as defendants Jas. A. Lowe, Clarence J. Ebel, Benjamin C. Getzelman, their heirs and assigns, and two land trusts that had banks as trustees. It further alleged that other persons might exist with assorted interests in the property and named these persons as defendants under the designations of "unknown owners" and "non-record claimants." Accompanying the complaint was an "Affidavit for Publication Regarding Unknown Owners and Non-Record Claimants." In it, an attorney for the Village averred as follows:

"Affiant *** states that in addition to the persons designated by name on the Complaint filed in the above cause, there may be other person(s) who are interested in said action who have or claim[ ] some right, title, interest or a lien in, to or upon the real property, or some part thereof, described in the Complaint; that the name of each such person(s) is unknown to the Plaintiff and to this Affiant, and upon diligent inquiry, cannot be ascertained, and such other persons are made parties defendant to said action by the name and description of 'unknown owners.'

Affiant further states, in addition to persons designated by name on the Complaint filed in the above case, and 'unknown owners' there may be other parties who have an interest in the Premises that have not yet been recorded, cannot be determined by Plaintiff, and such other persons are made parties defendant to said action by the name and description of 'non-record claimants.' "

¶ 4    On February 1, 2007, the Village filed a publisher's certificate of publication that was addressed to all the parties listed in the complaint and that purported to make all of them parties to the eminent-domain action.

¶ 5    The Village filed affidavits of personal service on the two bank trustees.

¶ 6    On March 9, 2007, the Village filed a second affidavit for service by publication in which it sought to serve Getzelman, Lowe, Ebel, and their heirs and assigns. In that affidavit, counsel for the Village averred that, despite diligent inquiry, the names of the heirs and assigns remained unknown and they could not be found. In a second affidavit, a private investigator averred that he had sought Getzelman, Lowe, and Ebel and could not find them, but he had evidence that at least two of them had died. The Village published notice to Getzelman, Lowe, Ebel, and their heirs and assigns.

¶ 7    Next, the Village moved for default judgment against all the parties it had originally named, including unknown owners and nonrecord claimants, and the court granted that motion.

¶ 8    On July 26, 2007, the court entered judgment for the Village. The order stated that Lowe, Ebel, Getzelman, "their heirs and/or assigns," and the two bank trustees had been served, but had failed to appear. It further said that "[j]udgment is entered in favor of Plaintiff, Village of Algonquin," and against the same parties that it described as having failed to appear. In other words, the order did not mention unknown owners or nonrecord claimants. The court granted the Village fee-simple absolute title to the property as listed in the original

-3-

complaint.

¶ 9    On January 20, 2010, the Nagels filed their section 2–1401 petition. They asserted that, because the Village had not properly served them, the trial court had lacked personal jurisdiction over them, making the condemnation judgment void as to them. They alleged that they lived at 1109 Pioneer Road and that they used as their driveway and primary means of vehicle access to their detached garage a segment of the condemned property on which no road had been built. The Nagels further alleged that they had bought their property in 1975 and that the driveway and the associated garage were already in place. Finally, they alleged that the Village was aware of their use of the segment for their driveway, as shown by its having sent the Nagels two letters concerning the condition and use of the driveway. They attached the letters as exhibits.

¶ 10   The Village responded, arguing, among other things, that, because the letters were outside the record, they were inadmissible as evidence of lack of personal jurisdiction over the Nagels. In support of that argument, it cited *Muslim Community Center v. Village of Morton Grove*, 392 Ill. App. 3d 355 (2009). In that decision, while deciding whether a trial court had "subject matter jurisdiction," the reviewing court stated that " '[i]n the case of a collateral attack on a judgment, all presumptions are in favor of the validity of the judgment attacked, and want of jurisdiction must appear on the face of the record.' "[2] *Muslim Community Center*, 392 Ill. App. 3d at 358 (quoting *Scheller v. Trustees of Schools of Township 41 North, Range 12, East of the Third Principal Meridian*, 67 Ill. App. 3d 857, 866 (1978)).

¶ 11   The court had a hearing on the petition at which it did not hear testimony or admit exhibits. The arguments at the hearing suggest that both parties assumed that the condemnation order had applied to unknown owners and nonrecord claimants. Counsel for the Nagels argued that the Nagels had gained rights to the property through adverse possession. He also told the court that the Village had sent the Nagels a letter telling them that they could no longer use their driveway. The court ruled that the condemnation judgment was void as to the Nagels, thus granting their petition.

¶ 12   The Village filed a timely notice of appeal. It now repeats its arguments that lack of personal jurisdiction must be apparent on the face of the record for a judgment to be void and that no flaw in jurisdiction of the Nagels was apparent in the record. It also argues that the record positively shows that it gained personal jurisdiction over the Nagels through the published notice. The briefs of both parties assume that the condemnation judgment was, on its face, applicable to nonrecord claimants, the class of defendant into which the Nagels would most likely fall.

¶ 13                                    ANALYSIS

¶ 14   Initially, we note that the trial court probably intended that the condemnation judgment

---

[2]A collateral attack is an attack by means of a freestanding vehicle, "such as *** [a] petition[ ] brought under section 2–1401," on a final judgment. *People v. Mingo*, 403 Ill. App. 3d 968, 970-71 (2010).

be applicable to all whom the Village described as defendants, including the unknown owners and nonrecord claimants. That it entered the default judgment against all defendants strongly implies this. Thus, the Village likely would be entitled to have the court modify the condemnation judgment *nunc pro tunc* to include unknown owners and nonrecord claimants. See, *e.g.*, *Kingbrook, Inc. v. Pupurs*, 202 Ill. 2d 24, 32 n.3 (2002) (noting that, even after a court has otherwise lost jurisdiction, it may correct an order *nunc pro tunc* when the record clearly shows an error in the form of the original judgment). Given this, we can act most efficiently by accepting the parties' assumption that the judgment applied to unknown owners and nonrecord claimants. We also note that since this case concerns the granting of a section 2–1401 petition without an evidentiary hearing–essentially, judgment on the pleadings–our review is *de novo*. See *People v. Vincent*, 226 Ill. 2d 1, 14-17 (2007) (discussing why the *de novo* standard of review is applicable to dismissals and judgments on the pleadings in section 2–1401 proceedings).

¶ 15 Turning to the parties' arguments, we see that the Village's brief implies at times that we should presume the judgment to be valid against everyone with a claim–effectively, valid against the world. A judgment that affects the status of property and is good against the world is, as we discuss, a judgment *in rem*. We therefore address the question of whether an eminent-domain action is an action *in rem*. In *City of Crystal Lake v. La Salle National Bank*, 121 Ill. App. 3d 346 (1984), we held that it was.

¶ 16 *Crystal Lake* is the sole case in which this court has discussed whether an eminent-domain condemnation is an action *in rem*. There, we held that the "court of competent jurisdiction obtains jurisdiction of the *res* upon the filing of a[n eminent-domain] petition." *Crystal Lake*, 121 Ill. App. 3d at 351. Thus, according to that holding, the relevant jurisdiction is over the property, not any individual defendants. Indeed, "[t]he legal fiction underlying an *in rem* proceeding is that the 'property, not the owner of the property, is liable to the complainant. It treats property, therefore, as the defendant, susceptible of being tried and condemned, while the owner merely gets notice, along with the rest of the world, and may appear for his property or not.' " *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526, 532-33 (2010) (quoting Rufus Waples, Treatise on Proceedings *In Rem* § 1, at 2 (1882)). The consequence of this is that "[t]he distinguishing characteristic of a judgment *in rem* is that it operates directly upon property and is *binding upon all persons* in so far as their interest in the property is concerned." (Emphasis added.) *Killebrew v. Killebrew*, 398 Ill. 432, 437 (1947). Put another way, the resulting judgments are enforceable against nonparties. *In re Possession & Control of the Commissioner of Banks & Real Estate of Independent Trust Corp.*, 327 Ill. App. 3d 441, 466 (2001).

¶ 17 After careful review, we reject the holding in *Crystal Lake* and conclude that, in an eminent-domain action, a court must have personal jurisdiction over affected persons for two reasons. One, the analysis in *Crystal Lake* fails given current statutory law. Two, the reasoning in *Crystal Lake* goes against the supreme court's holding in *McGahan*, which teaches that *in rem* actions bear formal markers of being *in rem* that are absent in eminent-domain actions.

¶ 18 The analysis in *Crystal Lake* applies only when an action is *in rem* by statutory provision, and no such provision for eminent domain currently exists in Illinois. In *Crystal Lake*, we

stated that we were adopting the reasoning of *San Bernardino Valley Municipal Water District v. Gage Canal Co.*, 37 Cal. Rptr. 856 (1964). *Gage Canal* in turn relied on a California Code of Civil Procedure provision that stated:

> " 'Any judgment rendered in such a[n eminent-domain] proceeding shall be binding and conclusive not only upon the persons named as defendants and served with process but upon *** all persons unknown claiming any right, title, estate or interest in the property described in the complaint and shall have the force and effect of a judgment in rem.' " *Gage Canal Co.*, 37 Cal. Rptr. at 859 (quoting Cal. Civ. Proc. Code § 1245.3).

Nothing in current Illinois statutory law gives similar effect to condemnation judgments. Indeed, section 10–5–10(d) of the Eminent Domain Act (Act) (735 ILCS 30/10–5–10(d) (West 2008)) states that "[a]ny interested persons whose names are unknown may be made parties defendant by the same descriptions and in the same manner as provided in other civil cases."[3] Thus, the law assumes that individual parties, not the land itself, are the defendants in an eminent-domain action. Further, the Act, unlike the California statutory provision, does not use the phrase "*in rem*" anywhere.

¶ 19    The holding in *Crystal Lake* is also out of harmony with *McGahan*, in which the supreme court discussed at length what actions are truly *in rem*. The *McGahan* court noted ongoing confusion in Illinois courts between actions that are *in rem* and those that are *quasi in rem*, that is, ones that decide property rights only as between the served parties. *McGahan*, 237 Ill. 2d at 535. Noting that at the heart of *in rem* jurisdiction is the fiction that *the property* is the defendant, the *McGahan* court stated that "[o]ne of the pivotal differences between *in rem* and *quasi in rem* actions is whether the defendant is the property or a named person." *McGahan*, 237 Ill. 2d at 532, 536. It further noted that *in rem* proceedings must include a procedure designed to give notice *to the world*. *McGahan*, 237 Ill. 2d at 536-37. In an eminent-domain action such as this one, the property is not named as a party, no provision is made for notice to the world, and the relevant statute provides for normal, individual defendants. We conclude, following the guidelines in *McGahan*, that an eminent-domain action such as this one is not *in rem*. Thus, the judgment was effective only as to defendants whom the Village properly made parties to the action.

¶ 20    Given that conclusion, we can logically turn now to the issue of who the defendants were in this action and what provision the law makes for service upon them. Understanding that the action is not *in rem* is an aid to the analysis. Such understanding is a reminder that, even when the plaintiff has identified and served some defendants using generic descriptors such as "nonrecord claimants," this is not the same thing as making the world a defendant. Therefore, rules for allowing service by publication can apply only to defendants whom the plaintiff has unsuccessfully attempted to identify (as well as those the plaintiff cannot reach for other reasons).

¶ 21    Section 2–206(a) of the Code describes the requirements for service by publication:

> "Whenever, in any action affecting property *** within the jurisdiction of the court,

---

[3]The Illinois Municipal Code's eminent-domain provision incorporates the Act's provisions by reference. 65 ILCS 5/11–61–1 (West 2008).

*** plaintiff *** shall file, at the office of the clerk of the court ***, an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained, the clerk shall cause publication to be made in some newspaper published in the county in which the action is pending. *** The publication shall contain *** the names of the parties to be served by publication ***." 735 ILCS 5/2–206(a) (West 2008).

Although this provision gives a plaintiff a way to serve defendants whom it cannot find despite trying, it does not allow for blanket service on those who might have claims but whom the plaintiff has not attempted to identify. Put another way, no matter how diligently a plaintiff has sought one defendant (or class of defendants), that diligence is not transferable to other defendants. A broader reading might allow a plaintiff to make a judgment effectively *in rem* by filing a broad and vague affidavit. Moreover, a broader reading might allow publication service on obviously interested persons to whom the plaintiff simply never thought or attempted to give notice, a result in obvious tension with due process principles.

¶ 22 Here, in its filing in the trial court, the Village described its attempts to find the title owners and their heirs and assigns. It did not describe any specific attempt to find any nonrecord claimants; it said simply that it thought such might exist. This was so despite circumstances that suggested that many such persons existed. The maps in the Village's filings show many residential lots bordering the property. The houses on those lots surely have driveways that cross the tree-lawn/parkway areas of the property to get access to the streets. Each driveway thus implies a potential claim to a right to use the property for access to the associated lot. Contrary to what the Village argues, its apparent diligence in seeking the individual titleholders and those who might claim from them is irrelevant to its ability to serve nonrecord claimants by publication. Thus, published notice could be effective only to those whom the Village had actually sought to identify. As the Village never sought any nonrecord claimants, its published notice was not effective as to the Nagels.

¶ 23 We turn now to the rule in *Muslim Community Center* and the Village's assertion that lack of jurisdiction must appear on the face of the record. Given that its affidavits do not support its claim to have served the Nagels by publication, we need not address whether the letters introduced by the Nagels rebut the Village's evidence of service. This does not make the rule entirely irrelevant, however. The Village could benefit from the rule on an odd presumption. We could, in theory, presume the judgment to be applicable to the Nagels simply because the record fails to positively show that they are not members of the class of heirs and assigns, that is, that they are not persons in the class that the Village *did* seek. However, we reject such a presumption.

¶ 24 The court in *Muslim Community Center* held that " '[i]n the case of a collateral attack on a judgment, all presumptions are in favor of the validity of the judgment attacked, and want of jurisdiction must appear on the face of the record.' " *Muslim Community Center*, 392 Ill. App. 3d at 358 (quoting *Scheller*, 67 Ill. App. 3d at 866). This holding was not a departure; rather, the rule is an old one, going back at least to the supreme court's decision in *Cullen v. Stevens*, 389 Ill. 35, 36-42 (1944). Nevertheless, at least in the realm of personal

jurisdiction, the rule has some problematic implications. If a court lacks personal jurisdiction over a party, the judgment is void as to that party and the party can attack it at any time, including collaterally. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002). If it is true both that a judgment entered without jurisdiction can be attacked collaterally *and* that, in a collateral attack for lack of jurisdiction, the lack of jurisdiction must appear on the face of the record, the implication is that the appearance of jurisdiction on the face of the record is sufficient to create jurisdiction in fact. This would be so even if the documents in the record showing jurisdiction were the product of fraud or serious error and the putative defendant had no notice of the proceeding. Such consequences are not in harmony with due process considerations.

¶ 25    We also note that a well-established line of precedent in the appellate court takes the position that false affidavits can confer no jurisdiction. An example of that position is clearly set out in *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 32 (2006):

> "[I]f the statutorily mandated inquiries are not made, a plaintiff's affidavit for constructive service 'does not speak the truth and cannot confer jurisdiction.' [Citations.] The party claiming the benefit of constructive service bears the burden of showing strict compliance with every requirement of the statute, and nothing else will confer jurisdiction to the court or grant validity to the court's judgment. [Citation.] When a defendant has not been served with process as required by law, the court has no jurisdiction over that defendant and a default judgment entered against him or her is void. [Citations.] A petition attacking a judgment as void may be brought at any time, in either a direct or collateral proceeding."

Similar cases include *Bank of New York v. Unknown Heirs & Legatees*, 369 Ill. App. 3d 472, 476 (2006), *First Bank & Trust Co. of O'Fallon v. King*, 311 Ill. App. 3d 1053, 1056 (2000), *Household Finance Corp., III v. Volpert*, 227 Ill. App. 3d 453, 454-55 (1992), and *First Federal Savings & Loan Ass'n of Chicago v. Brown*, 74 Ill. App. 3d 901, 906-07 (1979). Perhaps significantly, in none of these cases does the court emphasize that the attack is collateral. Indeed, in some, such as *Nasolo* itself, the collateral character is merely a deduction from a close reading of the facts.

¶ 26    Despite the implications of the rule in *Muslim Community Center*, and despite the precedent contrary to it, the rule is one that the supreme court has never overruled or abrogated. It is thus binding on us. We need not, however, extend it to circumstances in which the supreme court never applied it. We find *no* case in which a court applied the rule to presume that a person was within a class of defendants named only generically.

¶ 27    The Village implies that the rule can create not just a burden on an undisputed defendant to show from the record a flaw in service, but also, at least in some circumstances, a burden on a possible defendant to show from the record that he or she is not a defendant. Some instances of such a presumption would lead to absurd results. For instance, if a plaintiff has a judgment against a person named John Smith, someone named John Smith must rely solely

on the record[4] to show that he is the wrong John Smith. Forcing the Nagels to show from the record that they are not heirs or assigns of Lowe, Ebel, or Getzelman would be equally unreasonable. Quite simply, court records typically do not contain such extensive information about matters that would most often be collateral to the case. We are aware that the Village has not suggested that the rule in *Muslim Community Center* works in this way. We merely point out an obvious limit of the rule.

¶ 28   The Village suggests that application of the rule in *Muslim Community Center* creates a presumption that the judgment binds any person who has a nonrecord claim. That suggestion assumes, of course, that the record is somehow consistent with proper service on every possible nonrecord claimant. Our discussion of section 2–206(a) shows why this is not the case here. The claim of the mere possible existence of nonrecord claimants is insufficient to constitute service on such claimants as a class. The record refutes the claim of service on the Nagels, and the trial court was correct to hold the judgment void as to them.

¶ 29                                   CONCLUSION
¶ 30   For the reasons we have stated, we affirm the judgment granting the Nagels' section 2–1401 petition.
¶ 31   Affirmed.

---

[4]Under the precedent supporting *Muslim Community Center*, the "record" in this context does not include the entire common-law record. *Cullen*, 389 Ill. at 36-42, contains an extensive discussion of what filings count as part of the record when personal jurisdiction is challenged.